STATE OF IOWA, Appellee, v. O. E. PHELPS, Appellant.

EMBEZZLEMENT: Evidence—Sufficiency. Testimony relative to a charge of embezzlement of corporate stock by an agent reviewed, and held ample to support a verdict of guilty.

*Appeal from Story District Court.*—G. D. THOMPSON, Judge.

MARCH 13, 1923.

THE defendant was indicted for embezzlement, under Section 4842, Code, 1897. The prosecution was predicated upon an alleged agency, whereby one Rosenfeld intrusted to the defendant, as his agent, certain property, to be sold by the defendant and accounted for; if not sold, to be returned. The indictment alleged a fraudulent conversion, with intent to embezzle. The defendant pleaded not guilty. Upon trial had, a verdict of guilty was rendered, and judgment was entered thereon. The defendant appeals.—*Affirmed.*

*Charles H. Hall*, for appellant.

*Ben J. Gibson*, Attorney-general, *John Fletcher*, Assistant Attorney-general, *Arthur Buck*, County Attorney, and *Fred E. Hansen*, for appellee.

EVANS, J.—The transaction under consideration occurred in the summer of 1919. The defendant was a corporate stock salesman. He had organized a corporation, of which he was the secretary and general manager and stock salesman. This company was known as the Ozark Jewel Mining Company. He solicited Rosenfeld, a resident of Story County, as a purchaser of $2,500 of par stock. Rosenfeld was already the owner of $10,000 of par stock in a corporation known as the Re-Insurance Life Company. Rosenfeld represented himself as ready to buy $2,500 of stock in the defendant's company, if he could dispose of his Re-Insurance Life stock at par. The evidence for the State was that the defendant assured Rosenfeld that he could sell such stock for him at par. The result of the negotiations had on July 25, 1919, was that Rosenfeld delivered to the defendant two certificates of 50 shares each, of a par value of $100 per share, and that the defendant undertook to find a purchaser for the same at par. It was further agreed that, in the event of success by the defendant in making such sale, Rosenfeld would apply $2,500 of the purchase money of his stock to the purchase of 25 shares of the stock of defendant's company. At the time of the delivery of the certificates by Rosenfeld, he indorsed them in blank, with the understanding that such indorsement should be used in the transfer of the stock to a purchaser at par. On August 8th following, the defendant hypothecated such stock in his own name to one of the Des Moines banks, as collateral for a loan of $2,500 to himself. The stock was ultimately sold by the bank as collateral, and the defendant's debt was collected therefrom. No pretense of accounting was ever made to Rosenfeld, though appropriate demand therefor was made. The stock thus appropriated by the defendant was found by the jury to be of a value of $4,500. The evidence is not greatly in dispute as to the material and overt facts, as distinguished from the inner mind and purpose of the defendant. The principal dispute of fact made by the defendant as a witness is largely a matter of conclusion and argument. Such conclusion, put forward by him in evidence, was largely that he was acting solely as representative for his company, the Ozark Jewel Mining Company, and that all he did in relation to the handling of the Rosenfeld stock was done

for the benefit and use of his *company*, and that, therefore, his company, and not he himself, is the party responsible for whatever wrong was perpetrated. It is one of his contentions also that the transaction between him and Rosenfeld was in the nature of a trade or exchange of property, wherein he represented his own company, and whereby the parties mutually agreed to an exchange of corporate stock, and whereby the Ozark Jewel Mining Company agreed to purchase Rosenfeld's reinsurance stock for $10,000, and to pay therefor by the issuance of $2,500 of its own stock, and by paying the difference, of $7,500, in cash. Pursuant to this theory, it is contended that a relation of debtor and creditor was created between Rosenfeld and the Ozark Company. This theory is the first point put forward in appellant's argument, and it is earnestly urged therein that the evidence was wholly insufficient to sustain a finding by the jury that the relation of principal and agent had been created, as between the defendant and Rosenfeld.

The theory thus put forward is a strained one, at best, upon this record. Nevertheless, the defendant got the full benefit of it in the submission to the jury. On the other hand, the evidence of agency assumed by the defendant for the sale of the Rosenfeld stock was ample to require the submission of the issue to the jury. The same thing is to be said concerning the theory put forth by defendant that he had hypothecated the stock and borrowed the money thereon for the use of his company, and not for his own personal use. It is undisputed, however, that the only evidence of such purpose was deeply hidden in his own breast. He made no disclosure to the bank from which he borrowed, of any outstanding interest whatever in said stock. He transferred it in his own name. He borrowed the money in his own name. He deposited it to his checking account in his own name. No one but himself personally ever drew a check upon such account. The trial court, however, gave him the benefit of his theory in the instructions to the jury, and instructed, in substance, in Instruction VIII that, if the defendant honestly believed that, under his agreement with Rosenfeld, he had a right to do what he did in the hypothecation of the shares of stock, then it was a good defense. The burden

was put upon the State to prove beyond reasonable doubt that the defendant "did not so believe."

We see little to be gained by a discussion of the details of the record. The case presented by the State is not doubtful on the merits. Counsel for the defendant frankly rests his appeal upon the merits. His only claim of particular error in the trial is that the trial court in its instructions should have elaborated and emphasized somewhat the theory upon which the defense was predicated. Certain requested instructions were presented and were refused. So far as they were proper, and in their more important aspects, they were, however, included in the instructions given by the court upon its own motion. A careful examination of the record satisfies us that the defendant had a fair trial, and we find no ground in the record to doubt his guilt. The judgment below is, accordingly,—*Affirmed*.

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.